UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

JOEY F. MARTIN,

    Debtor.

No. 11-10807 t7

MINNIE QUINTANA,

    Plaintiff,

v.

Adv. No. 11-1101

JOEY F. MARTIN,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on defendant's Motion for Partial Summary Judgment, filed March 13, 2012, doc. 30 (the "Motion"), and the plaintiff's response thereto, filed May 1, 2012, doc. 32 (the "Response"). Defendant did not file a reply.

This is a core matter, and the Court may enter a final order. The Court received and reviewed briefs of the parties in support of their positions. The Court has considered the matter and has made an independent inquiry into applicable case law. Being sufficiently advised, the Court hereby issues the following Memorandum Opinion. For the reasons set forth below, the Motion is denied.

### PLAINTIFF'S COMPLAINT

Plaintiff commenced this adversary proceeding on June 13, 2011, seeking a determination that the amounts defendants allegedly owe to plaintiff (alleged to be about $110,000 plus punitive damages) are nondischargeable under 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and/or § 523(a)(6). The complaint relates to the 1999 transfer of certain real

property from plaintiff to defendant, the reconveyance of that property to plaintiff in 2007, and the disposition of certain insurance proceeds when a house on the property was destroyed by fire in 2007.

## THE MOTION AND THE RESPONSE

By the Motion, defendant seeks summary judgment on all claims,[1] arguing that they are barred by the applicable statute of limitations. Motion, pp. 2, 5. In general, plaintiff's claims sound in fraud. Under New Mexico law, claims based on fraud must be brought within four years. N.M.S.A. (1978) § 37-1-4. As set forth below, the actions plaintiff complains of occurred between February, 1999 and early 2007. Defendant argues that if the statute of limitations began to run before June 13, 2007 and was never tolled, all of plaintiff's claims would be time-barred, and therefore could not be the basis of a nondischargeability judgment. *See e.g. In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994) ("if suit is not brought within the time period allotted under state law, the debt cannot be established.").

Plaintiff responds to the Motion by arguing that: (i) plaintiff did not discover defendant's 1999 fraud until much later, and plaintiff timely brought a state court action against defendant; (iii) the state court action was settled in 2004, and the settlement agreement tolled the statute of limitations; (iii) defendant's conduct after he signed the settlement agreement equitably tolled the statute of limitations; and (iv) the conduct complained of in January, 2007 was not discovered until after June 13, 2007, so the complaint was timely.

## FACTS

---

[1] The Motion is styled a "partial" motion for summary judgment, but the relief sought is the dismissal of all claims asserted in the complaint. Motion, p. 5.

Neither party complied with Fed.R.Civ.P. 56(c) or Local Rule 7056-1(b), which require that each alleged material undisputed fact be separately identified, and supported with citations to the record. Instead, defendant supported the Motion with a copy of plaintiff's interrogatory responses, which contain nine pages or so of verified allegations, similar to the unverified allegations in the complaint. Motion, Ex. A. The verified allegations are not separately numbered, and the Motion does not separately refer to specific allegations. Defendant did not submit any evidence of his own to support the Motion, or dispute any of plaintiff's verified allegations.

In her Response, plaintiff admits the accuracy of the interrogatory responses (naturally) and submits in addition her affidavit and the affidavit of attorney Peter Johnstone.

The following summarizes the facts, taken from the interrogatory responses and affidavits, that the Court will take as undisputed for the limited purpose of ruling on the Motion:

1. In 1960, Plaintiff became the owner of certain real property with a street address of 914 S. Riverside Drive, Espanola, New Mexico 87532 ("Lot One").

2. Plaintiff married Flaymon Sandoval ("Sandoval") in 1965. They are the parents of the defendant.

3. In 1977, plaintiff deeded her interest in Lot One to herself and Sandoval, jointly.

4. Plaintiff divorced Sandoval in 1981.

5. As part of the property settlement in the divorce, plaintiff was awarded Sandoval's interest in Lot One. However, Sandoval failed and refused to convey Lot One to plaintiff.

6. Defendant told plaintiff that he would talk to Sandoval and convince him to deed his interest in Lot One to defendant. Defendant told plaintiff that he would then deed his interest back to plaintiff, so she would once again be the sole owner of Lot One.

7. Defendant told plaintiff that Sandoval would transfer his interest in Lot One to defendant only if plaintiff also deeded her interest in Lot One to defendant. Defendant promised plaintiff that he would deed Lot One back to her once Sandoval transferred his interest in Lot One to defendant. Defendant never intended to transfer Lot One back to plaintiff, but instead intended to gain ownership of Lot One himself.

8. Defendant convinced Sandoval to execute a quitclaim deed for Lot One to plaintiff, which he did on February 2, 1999, and which was recorded on February 3d, 1999.

9. Defendant never told plaintiff that he had obtained Sandoval's quitclaim deed for Lot One to plaintiff. Instead, defendant coerced and misled plaintiff into believing that she must transfer title in Lot One to defendant.

10. In reliance on defendant's fraudulent misrepresentations and omissions, plaintiff executed and delivered a quitclaim deed for Lot One to defendant on February 2, 1999. Defendant recorded Sandoval's quitclaim deed on February 3, 1999, and recorded plaintiff's quitclaim deed immediately thereafter.

11. After obtaining sole title to Lot One, Defendant refused to transfer his interest in Lot One to plaintiff.

12. Defendant borrowed money and used Lot One as collateral to secure the loan. Defendant used the loan proceeds to purchase "Lot Two," a half-acre lot adjoining Lot One.

13. Plaintiff was aware of defendant's intent to mortgage Lot One to purchase Lot Two. However, defendant told plaintiff that the loan secured by the mortgage on Lot One would be $20,000.00, and that after defendant paid off the loan he would transfer Lot One to plaintiff. Despite these representations, defendant borrowed $100,000.00 instead of $20,000.00 and told plaintiff "that's what the bank told me to borrow." Defendant secured the $100,000.00 loan with a mortgage on Lot One.

14. Defendant used a portion of the $100,000 loan to pay off his student loans (approximately $10,000), and used the remainder for personal expenses. At no time did defendant pay any consideration to plaintiff for Lot One. These fraudulent misrepresentations and omissions took place between February 2, 1999 and December 1999.

15. One week before Christmas 1999, defendant coerced plaintiff out of her house on Lot One and moved her into a mobile home on Lot Two. Defendant told plaintiff that he was moving her into the mobile home on Lot Two so that he could "fix up" the house on Lot One for her. Defendant had no intention of allowing plaintiff to move back into Lot One, since it was his intention that he and his domestic partner would live there.

16. After February 3, 1999, plaintiff on numerous occasions asked defendant to transfer Lot One back to her, but he just ignored her.

17. On June 28, 2004, Defendant conveyed Lot One to himself and Logan B. Martin ("L. Martin") as joint tenants.

18. Defendant did not tell plaintiff that he had deeded Lot One to himself and L. Martin as joint tenants; that he had mortgaged Lot One,[2] or that he had no intention of transferring title to Lot One back to her. These fraudulent misrepresentations and omissions took place between February 2, 1999 and June 29, 2004.

19. On June 29, 2004, defendant served plaintiff with an eviction notice to vacate the mobile home on Lot Two.

20. On or about August 4, 2004, plaintiff filed a Complaint for Duress, Fraud, Conspiracy, Constructive Trust, Resulting Trust, and Conversion against defendant and L. Martin, commencing cause D117 CV2004-00321 in the First Judicial District Court, State of New Mexico (the "State Court Action").

21. On or about October 14, 2004 the parties attended mediation with Peter Johnstone to attempt to resolve the issues raised in the State Court Action.

22. At the mediation, the parties entered into a settlement agreement (the "2004 Settlement Agreement").

23. At the mediation, plaintiff learned that defendant and L. Martin had mortgaged both Lot One and Lot Two.

24. The 2004 Settlement Agreement provides in part:

---

[2] This allegations is inconsistent with the allegations in fact 13, above.

    a. Plaintiff would immediately take back possession of Lot One.
    b. Defendant and L. Martin would move out of Lot One.
    c. Defendant and L. Martin had the right to refinance the mortgage on Lot One up to $110,000.00, which was to be paid in full within 6 years.
    d. Defendant and L. Martin would execute a note up to $110,000.00 to plaintiff (the "Plaintiff Note"), secured by a third mortgage on their house in Santa Fe, NM ("Santa Fe House"). A balloon payment on the Plaintiff Note was to be due in 6 years.
    e. Defendant and L. Martin were to quitclaim Lot One to plaintiff, which deed was to be held in escrow until the debt on Lot One was paid off (on or before 6 years). In the interim, defendant and L. Martin were to execute a deed to Lot One to defendant, L. Martin, and plaintiff as tenants in common, with plaintiff having an undivided one-half interest.
    f. Defendant and L. Martin agreed to cap the debt on the Santa Fe House at $350,000.00. They were to send copies of the mortgage statements quarterly to plaintiff.
    g. The State Court Action would be dismissed without prejudice. It would only be refiled under the following conditions:
      i. Default on the note on Lot One;
      ii. Insufficient equity in the Santa Fe House to cure default;
      iii. Only the fraud claim could be refiled, with damages capped at amount due on note.
    h. The statute of limitations was stayed.
    i. All parties were to cooperate as necessary to effectuate and implement the agreement.

25. Plaintiff moved back into the house on Lot One in 2004. Under the settlement, defendant was to continue making all payments on the Lot One mortgage as well as paying for homeowner's insurance and taxes until he paid the mortgage was paid in full or until he paid the Plaintiff Note balloon when it came due in six years.

26. Defendant failed and refused to execute the Plaintiff Note, cap the debt on the Santa Fe Property at $350,000.00, or execute the quitclaim deeds relating to Lot One.

-7-

27. Defendant never intended to comply with the terms of the 2004 Settlement Agreement, and signed the agreement to further defraud plaintiff. Plaintiff justifiably relied on the 2004 Settlement Agreement.

28. On or about January 1, 2007, plaintiff's house on Lot One was destroyed by fire.

29. Defendant, as the named insured, was paid $87,224.92 by the insurance company for the fire loss.

30. Defendant spent the insurance proceeds to pay the mortgage loan on Lot One, rather than to rebuild plaintiff's house, leaving plaintiff homeless and destitute.

31. Defendant and L. Martin quitclaimed Lot One to plaintiff and stated that their obligations under the 2004 Settlement Agreement were satisfied, and that they wished to sever all ties with plaintiff.

32. In or around September, 2010 the parties attended a second settlement facilitation with Peter Johnstone to resolve the issues relating to the conversion and misappropriation of the $87,224.92 insurance proceeds.

33. The parties reached a settlement agreement and Peter Johnstone was to write up the terms of the agreement and forward them to the parties for signatures.

34. Once again, defendant did not comply, and never intended to comply, with the terms of the settlement agreement, and his negotiations and agreement to 2010 settlement constituted further fraudulent representations and omissions.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there

-8-

Case 11-01101-t    Doc 36    Filed 10/05/12    Entered 10/05/12 10:02:08    Page 8 of 13

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides: "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct.

2505, 2512, 91 L. Ed. 2d 202 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

DISCUSSION

The question before the Court is whether there is any genuine factual dispute that the statute of limitations bars plaintiff's claims against defendant. Without ruling on the merits of the statute of limitations defense, the Court finds that the verified allegations set forth above, none of which were disputed by defendant, raise fact issues about defendant's statute of limitations defense.

1.  <u>Fact Issues About When the Claims Accrued</u>.  Under New Mexico law, actions "for relief upon the ground of fraud" must be brought within four years. N.M.S.A. (1978). § 37-1-4. N.M.S.A. (1978) § 37-1-7, titled "Accrual of cause of actions for fraud or mistake, injuries or conversion of property" provides:

> In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved.

"Discovery" has been interpreted to mean "discovery of such facts as would, on

reasonable diligent investigation, lead to knowledge of [the] fraud." *Ambassador E. Apartments Investors v. Ambassador E. Investments*, 106 N.M. 534, 536, 746 P.2d 163, 165 (Ct. App. 1987), citing *Romero v. Sanchez,* 83 N.M. 358, 361, 492 P.2d 140, 143 (1971).

Viewed in the light most favorable to plaintiff, the verified allegations set forth above raise fact issues about when plaintiff did or should have discovered some or all of defendant's alleged fraudulent activity. For example, the evidence at trial could show that plaintiff had no grounds to sue defendant for fraud based on the 1999 quitclaim deed to defendant until years later, because of defendant's assurances that he would reconvey Lot One to plaintiff after he "fixed up" the house. It could be that plaintiff was not put on notice of defendant's fraudulent conduct until 2004 when defendant conveyed Lot One to himself and L. Martin, an action clearly inconsistent with his alleged promise to re-convey Lot One to plaintiff.

Similarly, the evidence at trial could show that plaintiff had insufficient grounds to sue for fraud based on defendant's failure to comply with the 2004 Settlement Agreement for some years thereafter, such that the pending claims in this adversary proceeding are timely. Finally, it could be that the evidence at trial would show that the claim based on defendant's disposition of the 2007 insurance proceeds did not accrue until after June 13, 2007, making a fraud, malicious injury to property, and/or or breach of duty claim based on such disposition timely.

2. <u>Equitable Tolling</u>. Plaintiff also argues that under principles of equitable tolling, the applicable statute of limitations was tolled for one or more of the claims, so the complaint was timely. Response, pp. 7, 10. There is substantial case law in New

Mexico recognizing various equitable tolling principles.[3]

Much like the "discovery rule" issue, there are fact issues concerning equitable tolling that require denial of the Motion. If all of plaintiff's allegations are true, defendant's conduct has been reprehensible, and certainly puts the equitable tolling doctrine at issue. The defendant's statements to plaintiff over the years; his intent when refusing to re-convey Lot One; his intent when signing the 2004 Settlement Agreement; his intent when entering into the 2010 settlement; and his intent when applying the insurance proceeds to pay the Lot One Mortgage; all would be of interest to the Court when weighing equitable tolling arguments. The Court concludes that there are genuine fact issues about whether the statute of limitations should be equitably tolled.

## CONCLUSION

The Motion will be denied. This matter will be set for pre-trial discovery and trial on the merits. By denying the Motion, the Court is not ruling on the merits of the defendant's statute of limitations defense or any tolling or similar arguments plaintiff may assert with respect thereto.

---

[3] *See, e.g. Southwestern Inv. Co. v. Cactus Motor Co.*, 355 F.2d 674, 677 (10th Cir. 1966) (fraudulent concealment of a cause of action tolls a statute of limitations); *Jones v. Ford Motor Co.*, 599 F.2d 394, 399 (10th Cir. 1979) (limitations period for tort claims commences on discovery of fraud or upon discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of fraud); *Brown v. Behles & Davis*, 2004-NMCA-028, 135 N.M. 180, 86 P.3d 605, after remand 2004 WL 5000294 (same); *Porcell v. Lincoln Wood Products, Inc.*, 2010 WL 1541264, at *5 (D.N.M. 2010) (claim under New Mexico Unfair Practices Act accrued when buyer first knew or should have known of wrongful action); *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (discussing and recognizing the "continuing wrong doctrine" and equitable estoppel); *Martinez v. Martinez*, 2004-NMCA-007, ¶13, 135 N.M. 11, 14, 83 P.3d 298, 301 (in the context of a fiduciary relationship, party with superior knowledge has a duty to disclose material facts, and failure to do so tolls statute of limitations); *Village of Angel Fire v. Board of County Com'rs of Colfax County*, 2010-NMCA-038, ¶19, 148 N.M. 804, 809, 242 P.3d 371, 376 (discussing the application of the equitable estoppel doctrine to statutes of limitation); *Drummond v. Drummond*, 1997-NMCA-094, 123 N.M. 727, 732, 945 P.2d 457, 462 (party may be equitably estopped from asserting statute of limitations if that party's conduct has caused plaintiff to refrain from filing action). *Blea v. Fields,* 2005-NMSC-029, ¶20, 138 N.M. 348, 356, 120 P.3d 430, 438 (recognizing equitable estoppel doctrine in the statute of limitations context).

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. Appropriate orders will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: October 5, 2012

Copies to:

Chris W Pierce
Hunt & Davis, P.C.
2632 Mesilla St. NE
Albuquerque, NM 87110

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640